1

2

3

4                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
5                                    AT TACOMA

6

7   GRANITE STATE INSURANCE               CASE NO. C14-5085BHS
    COMPANY, a foreign insurer,
8                                         ORDER ON CROSS MOTIONS
                        Plaintiff,        FOR SUMMARY JUDGMENT
9       v.                                AND ON CERTIFICATION OF
    INTEGRITY STRUCTURES, LLC, a          QUESTION
10  Washington limited liability company,

11                      Defendant,

12  POINT AT WESTPORT HARBOR
    HOMEOWNERS' ASSOCIATION,
13
                    Defendant/Intervenor.
14

15

16          This matter comes before the Court on Granite State Insurance Company's Motion

17  for Partial Summary Judgment (Dkt. 23), Defendant/Intervenor Point at Westport Harbor

18  Homeowners' Association's Cross-Motion for Summary Judgment (Dkt. 27), and the

19  parties' responses to the Court's sua sponte request regarding certification to the

20  Washington State Supreme Court.  The Court has considered the pleadings filed in

21  support of and in opposition to the motions, the parties' briefing regarding potential

22  certification, oral argument, and the file herein.

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 1

In this "reverse bad faith" case, Plaintiff Granite State Insurance Company ("Granite State") seeks declaratory relief that it has no duty to defend or indemnify Defendant Integrity Structures, LLC ("Integrity"), or its assign, the Point at Westport Harbor Homeowners' Association ("Association"), under an insurance contract. Dkt. 1. It also makes other claims. *Id.* Integrity and the Association counterclaim, in part, against Granite State for breach of the duty to defend. Dkts. 10 and 26. Parties now make cross motions for partial summary judgment.

The Court finds that certification of a question[s] to the Washington State Supreme Court is unnecessary.

For the reasons below, Granite State's Motion for Partial Summary Judgment (Dkt. 23) is granted, and the Association's Cross-Motion for Summary Judgment (Dkt. 27) is denied.

## I.     FACTS AND PROCEDURAL HISTORY

**A.     Relevant Facts**

In 2006, developer Dodson-Duus, LLC ("Dodson-Duus") contracted with Integrity to be the general contractor for the construction of a multiunit condominium project in Westport, Washington known as The Point at Westport Harbor Condominiums ("Project"). Dkts. 10, at 1; and 28, at 1. Some of Integrity's members were also members of Dodson-Duus. Dkt. 28, at 1. The Project has 30 units and is located on a jetty or breakwater adjacent to a marina on one side and the ocean on the other. Dkt. 29, at 1.

1    Integrity had several insurance policies during the relevant period.  Dkts. 24-2; 24-

2    3; and 28.  In addition to its policies with Plaintiff Granite State, Integrity had a

3    Contractor Controlled Insurance Policy with Gemini Insurance Company ("Gemini"),

4    and policies with Century Surety and General Fidelity.  Dkts. 24-2, at 2-98; 24-3, at 1-

5    113; and 28.

6    In September 2010, the Association filed suit against Dodson-Duus in Grays

7    Harbor County Washington Superior Court ("underlying lawsuit"). Dkt. 28, at 1; *The*

8    *Pointe at Westport Harbor Homeowners' Association v. Dodson-Duus, LLC*, *et. al*.,

9    Grays Harbor County Washington Superior Court case number 10-2-01263-6.  In the

10   spring and early summer of 2011, parties in the underlying lawsuit conducted an

11   investigation of the Project, and the Association's engineer noted "probable deficiencies

12   in the construction of structural support components," and after additional investigation,

13   concluded that "the design and construction of the lateral force resisting system of the

14   project was dangerously deficient."  Dkt. 29, at 4.

15   Accordingly, on August 11, 2011, the Association filed a First Amended

16   Complaint against Dodson-Duus, adding as defendants Integrity (and others) making

17   claims, in part, for "damages due to defective construction and materials at the project" in

18   the underlying lawsuit.  Dkt. 24-1, at 4; *The Pointe at Westport Harbor Homeowners'*

19   *Association v. Dodson-Duus, LLC*, *et. al*., Grays Harbor County Washington Superior

20   Court case number 10-2-01263-6, consolidated with 10-2-01699-2.  The Association

21   sought, in part, "an award of damages for construction defects, incomplete construction,

22   and related damage" (Dkt. 24-1, at 3), and for negligence against Integrity "by reason of

1  their having caused defective and dangerous structural conditions and resulting property

2  damage to the Project" (Dkt. 24-1 at 4).  The Association also made claims against

3  Integrity "for negligent misrepresentation and fraudulent concealment of building

4  envelope defects."  Dkt. 24-1, at 4.  Integrity's insurer, Gemini, assigned a lawyer, Robert

5  C. Muth, to defend Integrity.  Dkt. 28, at 2.

6          On September 11, 2012, the Association and Integrity entered into a Contingent

7  Settlement Agreement.  Dkt. 24-1, at 41-43.  The contingencies were: (1) the Association

8  and Dodson-Duus were to enter into a settlement agreement, which included assignment

9  of all of Dodson-Duus' rights against Integrity regarding the "design development,

10  construction, inspection, marketing, sale, warranty, and repair" of the Project; (2) the

11  Association was to assert the assigned claims against Integrity;  (3) Integrity was to

12  "tender its defense to its three primary general liability insurers . . . and to any contractors

13  or subcontractors who were not enrolled in the Gemini wrap policy. . . . The tender [was

14  to] include notice of [the] contingent agreement to settle;" and (4) no insurer (or other

15  entity to whom the tender made) agreed to defend Integrity within 60 days of the tender.

16  *Id.*  If all the contingency terms were met, Integrity consented to judgment in favor of the

17  Association in the amount of $4.1 million.  *Id.*, at 42.  Integrity then assigned the

18  Association all rights against all the Project entities and "its three general liability

19  insurance carriers (but not against Gemini)."  *Id.*  Integrity agreed not to oppose any

20  reasonableness motion with respect to this agreement, and

23              [D]efense counsel appointed by Gemini for Integrity [would], at the
               Association's option, be instructed by Integrity to either preserve the
24              attorney-client privilege and attorney work product protections against all

other parties to the Litigation, insurers and others, or be instructed by Integrity to provide information to the Association regarding the reporting of defense counsel appointed by Gemini to insurers and Integrity regarding the litigation and exposures faced by Integrity in the litigation, and cooperate with the Association in prosecuting the assigned claims.

*Id.* In exchange, the Association agreed not to execute on the consent judgment on Integrity and to "defend and hold Integrity harmless against claims, cross-claims, or counterclaims by defendants in any action brought by the Association as assignee of Integrity . . . arising solely out of the assertion of said claims." *Id.* Counsel that signed the agreement for Integrity was Robert C. Muth and counsel for the Association was Leonard Flanagan. *Id.*, at 44.

In September 2012, Dodson-Duus settled with the Association and assigned its claims against Integrity to the Association. Dkt. 28, at 3. On November 5, 2012, the Association filed a Second Amended Complaint in the underlying lawsuit, naming Integrity and others as defendants. Dkt. 24-1, at 46-58. The Association, as Dodson-Duus' assignee, claimed that Integrity materially breached its contract regarding the Project with Dodson-Duus "in that there are numerous defects or deficiencies in the Project's materials, installation of the materials, design and/or construction of the project's weather resistive barrier system, roofs, structural, mechanical and other components." *Id.*, at 49. They alleged that the:

> [D]efects or deficiencies listed above have resulted in physical damage to the property, including but not limited to damage to the common elements, limited common elements, and units of [the] Project. Some of the defects and deficiencies may have begun causing such physical damage while original construction was under way. The defects and deficiencies are presently causing such physical damage, and will likely result in additional physical damage.

1    *Id.*, at 49.  The Association also made a claim for indemnity and contribution, and for

2    negligence in regard to "structural defects" against Integrity.  *Id.*, at 50 and 54.  The

3    Association made a claim for negligent misrepresentation and for fraudulent concealment

4    against Integrity in connection with a report on the Project's building envelope and

5    representations Integrity allegedly made regarding the defective conditions in the

6    building envelope.  *Id.*, at 55-56.  The Association sought damages, attorneys' fees, and

7    costs against Integrity.  *Id.*, at 57-58.

8         In late November 2012, Integrity tendered defense of the underlying lawsuit to its

9    three insurance carriers.  Dkt. 28.  Within thirty days of the tender letter from Integrity,

10   two of the insurance companies, Century Surety and General Fidelity, notified Integrity

11   that they were declining to defend it in the underlying lawsuit because of policy

12   exclusions.  Dkt. 28, at 5.

13        On November 29, 2012, Granite State received its tender letter from Integrity

14   written by attorney Robert Muth.  Dkt. 24-1, at 62-63.  The letter indicated that Mr. Muth

15   represented Integrity and that Integrity was "insisting Granite State provide a defense to

16   Integrity" under "policy number 02-LX8996361-0" in the underlying lawsuit.  *Id.*, at 62.

17   The letter maintained that "[u]nder the commercial general liability form CGC0001,

18   Granite State has agreed to pay 'those sums that the insured becomes legally obligated to

19   pay as damages because of . . . property damage to which this insurance applies.'"  *Id.*, at

20   62.  The letter further provided that "[y]our immediate attention is requested.  Please

21   contact this office immediately upon receipt of this tender in order that the insured's

22   interests may be protected."  *Id.*, at 63.  The letter included a copy of the Second

1  Amended Complaint from the underlying lawsuit but did not include a copy of the

2  September 11, 2012 Contingent Settlement Agreement between the Association and

3  Integrity.  *Id.*, at 63-64.  Mr. Muth states that he "did not intentionally withhold any

4  relevant information from [Granite State] or attempt to deceive Granite State."  Dkt. 28,

5  at 4.

6          On December 7, 2012, Granite State responded to Mr. Muth, acknowledged

7  receipt of the tender letter from Integrity, and wrote:

8
          At this point, we know very little about the claims being made by the
9          [Association].  In undertaking the investigation of this matter, [Granite
          State] is not waiving any right to accept, limit, or deny coverage.  At this
10         time, we request that you provide additional information necessary to
          confirm whether or not there is coverage under any of the [Granite State]
11         policy [sic] for this matter.  Specifically, we request from you: (1) records
          relative to your work on this project, (2) scope of work, (3) number of units
12         in project, (4) contracts relative to the construction of this project, (5)
          certificate of occupancy, (6) any documentation as to the allegations, (7) if
13         work was completed by a sub-contractor, any supporting documents as to
          their scope of work and copies of applicable subcontracts, and (8) any other
14         documents you believe would assist us in making this coverage
          determination.
15

16  Dkt. 24-1, at 66.

17          Mr. Muth forwarded Granite State's letter to Mr. Edward Flanagan (the

18  Association's lawyer) and asked him to provide the documents Granite State was

19  requesting.  Dkt. 28, at 6.  Mr. Muth also notified Mr. Flanagan that he failed to provide

20  Granite State with a copy of the Contingent Settlement Agreement when he sent the

21  tender letter, and asked if the Association would waive that contingency.  *Id.*, at 6-7.  Mr.

22  Flanagan never provided a substantive response to Mr. Muth's request.  *Id.*, at 7.  Mr.

23  Flanagan did not respond to Granite State.  Dkt. 29.

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 7

1    On February 5, 2013, Granite State sent an email to Mr. Muth asking if they could

2    "please have a response to our letter?"  Dkt. 24-1, at 68.

3    On February 7, 2013, Mr. Muth responded to Granite State's email and informed it

4    that he has "forwarded [Granite State's] letter to Mr. Flanagan in Seattle" and that Mr.

5    Flanagan would "be [Granite State's] point of contact with regard to that tender."  Dkts.

6    24-1, at 70; and 28, at 7.  Mr. Flanagan states that he did not respond to Granite State's

7    requests.  Dkt. 29, at 9.  Mr. Flanagan maintains that he did not, at that time, represent

8    Integrity.  Dkt. 29, at 9.

9    On April 4, 2013, Granite State again emailed Mr. Muth and copied Mr. Flanagan,

10   and wrote: "[t]o date, we have had no response to our request for information.  Please

11   advise if the insured plans to pursue coverage."  Dkt. 24-1, at 72.  Mr. Muth did not

12   respond.  Dkt. 28, at 7.  Later that day, Mr. Flanagan emailed Granite State asking if

13   Granite State would "be so kind as to forward a copy of the policy for [his] review, in

14   order to make that decision."  Dkt. 24-1, at 74.  Granite State forwarded a copy of the

15   policy.  Dkt. 29, at 10.  Mr. Flanagan states that had Granite State "asked whether the

16   insured was still requesting a decision on its tender of defense, presumably either Mr.

17   Muth or [he] would have advised that a defense of [Integrity] was no longer required."

18   Dkt. 29, at 10.  He adds,

19
20       This is so because by this time, the 60 day window provided for the insurer
         to respond in the contingent settlement agreement had long since expired,
21       and the other contingencies were fulfilled.  The question [Granite State]
         asked was still an open one, however, if the Granite State policies had
22       clearly showed that they could not conceivably cover the allegations of the
         Second Amended Complaint, it is unlikely that the Association would have
23       pursued the coverage claim further.

24

Dkt. 29, at 10.  The Association did not respond after Granite State sent the policy.

On June 12, 2013, Granite State again wrote Mr. Flanagan asking "is there anything else you need to make your decision?"  Dkt. 24-1, at 80.  The Association did not respond.  Dkt. 29, at 11.

On September 30, 2013, a stipulated consent judgment of $4.1 million was entered against Integrity in favor of the Association in the underlying lawsuit.  Dkt. 24-1, at 82-84.

On November 20, 2013, Integrity disclosed to Granite State for the first time the facts and details of the September 2012 Contingent Settlement Agreement between Integrity and the Association and the entry of the $4.1 million consent judgment.  Dkt. 24, at 3-4.

**B.    Procedural History**

On January 29, 2014, Granite State filed this diversity case against Integrity seeking declaratory relief that: (1) the policies at issue do not provide coverage for the Association's claims against Integrity or any part of the $4.1-million-dollar judgment, (2) Granite State has no duty to indemnify Integrity or its assigns, or pay any "defense costs, judgments, damages, costs, or expenses," that arise from the Association's claims against Integrity, and (3) that the purported assignment of claims by Integrity to the Association is unenforceable and void as to Granite State.  Dkt. 1.  Granite State is seeking damages for breach of contract and attorneys' fees.  *Id.*

Integrity filed an answer, and counterclaims for breach of contract, bad faith, coverage by estoppel, and violation of Washington's Consumer Protection Act ("CPA"). Dkt. 10.

The Association was permitted to intervene on June 25, 2014.  Dkt. 25.  It also answered and asserted counterclaims against Granite State for breach of contract, bad faith, coverage by estoppel, and for violation of Washington's CPA.  Dkt. 26.

C.    **Pending Motions**

Granite State now moves for partial summary judgment seeking an order that Integrity breached contractual, statutory and common law duties to Granite State; granting Granite State's declaratory requests one through three in the complaint; leaving for trial issues of causation, damages and request for attorneys' fees and costs; and dismissing Integrity's counterclaims for breach of contract, bad faith, coverage by estoppel, and violation of the CPA.  Dkts. 23 and 36.  The Association opposes the motion.  Dkt. 31.

The Association cross moves for summary judgment that Granite State is liable for breach of its duty to defend Integrity, Granite State is liable for insurance bad faith, Granite State has forfeited all coverage defenses, including all defenses based on any alleged breach of notice, cooperation, or consent-to-settle provisions of the policy, and harm is presumed from Granite State's bad-faith failure to defend.  Dkts. 27 and 38. Granite State responds, and opposes the motion.  It additionally argues that the Association has not established its standing to bring this cross motion.  *Id.*

In response to the Court's request, both parties have submitted briefing on whether it would be appropriate to certify a question or questions to the Washington State Supreme Court.  Dkts. 48-51, 53 and 54.

**D.      Organization of Opinion**

This opinion will first address whether the Association has standing to bring motions in this case, then address whether a question or questions should be ceritified to the Washington State Supreme Court, then Granite State's motion for summary judgment for an order declaring that Integrity breached the contract resulting in prejudice to Granite State and forfeiture of coverage, then the Association's motion for summary judgment for an order declaring that Granite State is liable for breach of its duty to defend Integrity, and lastly, Granite State's motion for summary dismissal of the Association's counterclaims.

## II.      DISCUSSION

**A.      Standing**

To the extent that Granite State challenges the Association's standing based on the argument that the assignment of rights was not perfected in the Contingent Settlement Agreement (Dkt. 37), the motion is denied.  In its response to the Association's motion for summary judgment, Granite State argues that the Association has not yet established that it has standing to bring this cross motion.  Dkt. 37.  It argues that not all of the contingencies in the Contingent Settlement Agreement were met.  *Id.*  Granite State points out that the agreement required that a copy of the agreement be sent to each of the insurance companies along with the tender letter and Second Amended Complaint.  *Id.*  It

1    is undisputed that this was not done.  *Id.*  Granite State maintains, then, that the

2    assignment of rights was not perfected through the settlement agreement.  *Id.*

3           Under Washington law, if a breach of a contract is "'material,' the promisee has an

4    election:  he or she may treat the breach as a failure of a condition that excuses further

5    performance, and thus terminate the contract, or he or she may waive the condition and

6    allow performance to continue."  *Colorado Structures, Inc. v. Ins. Co. of the West,* 161

7    Wn.2d 577, 588-89 (2007).

8

9           The Association properly points out that it waived the condition and allowed

10   performance to continue, so the Settlement Agreement (and thus the assignment of rights)

11   is not void on this basis.  Accordingly, the Court will consider the motions.

12   **B.      Certification of a Question or Questions to Washington State Supreme Court**

13          At the Court's request, the Association submitted seven potential questions for

14   certification to the Washington Supreme Court.  Dkt. 50.  It argued that this Court should

15   decide the first four and then send the following to the Washington State Supreme Court:

16               (1)      Does an undisclosed agreement that the insured will
17                        stipulate to judgment if the insurer does not agree to
                          defend within 60 days of the tender violate the insured's
18                        duty of good faith under RCW 48.01.030 as a matter of
                          law, or demonstrate that the insured has unclean hands?
19
                 (2)      Where the insurer does not ask any questions about the
20                        underlying case, does the insured have a duty to disclose
                          to the insurer a contingent settlement agreement that it
21                        will stipulate to a judgment if the insurer does not agree to
                          defend within 60 days?
22
23               (3)      If the undisclosed contingent settlement agreement
                          violates RCW 48.01.030 or demonstrates unclean hands,
24                        but is unrelated to the insurer's bad-faith failure to defend

1
2
3

> against a potentially covered claims [sic] for ten months, then is the insured entitled to (a) damages for breach of contract, (b) a presumption of harm from the failure to defend, (c) forfeiture of the insurer's coverage defenses, or (d) coverage by estoppel?

4

Dkt. 50.  Granite State opposes certifying any questions to the Supreme Court and argues

5

that all of the questions can be answered on the record.  Dkt. 48.

6

"Washington's Federal Court Local Law Certificate Procedure Act, Wash. Rev.

7

Code §§ 2.60.010–900, authorizes the Washington Supreme Court to accept certified

8

questions from federal courts."  *Queen Anne Park Homeowners Ass'n v. State Farm Fire*

9

*& Cas. Co*., 763 F.3d 1232, 1235 (9th Cir. 2014).  Under RCW 2.60.020, certification of

10

a question to the Washington Supreme Court is appropriate where "it is necessary to

11

ascertain the local law of this state in order to dispose" of a proceeding in federal court

12

and "the local law has not been clearly determined."  Further, under Washington's Rules

13

of Appellate Procedure 16.16,

14
15

> [t]he Supreme Court may entertain a petition to determine a question of law certified to it under the Federal Court Local Law Certificate Procedures Act if the question of state law is one which has not been clearly determined and does not involve a question determined by reference to the United States Constitution.

16
17
18

While the Court invited the parties to consider whether there were questions

19

regarding Washington law that should be answered by the Washington Supreme Court,

20

after considering the parties' arguments, the Court concluded that certification is

21

unnecessary and therefore, the Association's request to certify the above question(s) to

22

the Washington State Supreme Court (Dkt. 50) is denied.  In light of the facts here, the

23
24

Association has failed to show that "it is necessary to ascertain the local law" in order to

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 13

dispose of this proceeding in federal court or that "local law has not been clearly

determined."  This Court is able to address the merits of the motions and on further

reflection does not require the assistance of the Washington Supreme Court.  To the

extent that the Associaiton moves to certify questions (Dkt. 50), the motion is denied.

**C.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt.").

*See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*,

809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The

court must consider the substantive evidentiary burden that the nonmoving party must

1  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

2  U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual

3  issues of controversy in favor of the nonmoving party only when the facts specifically

4  attested by that party contradict facts specifically attested by the moving party.  The

5  nonmoving party may not merely state that it will discredit the moving party's evidence

6  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

7  *Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non

8  specific statements in affidavits are not sufficient, and "missing facts" will not be

9  "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

10

11  **D.     Granite State's Motion for Summary Relief for a Declaration That Integrity
       Breached the Contract, Resulting in Prejudice to Granite State and
12     Forfeiture of Coverage**

13           "Cooperation is essential to the insurance relationship because that relationship

14  involves a continuous exchange of information between insurer and insured interspersed

15  with activities that affect the rights of both."  *Staples v. Allstate Ins. Co.*, 176 Wn. 2d 404,

16  411 (2013). "Typically, an insured that substantially and materially breaches a

17  cooperation clause is contractually barred from bringing suit under the policy if the

18  insurer can show it has been actually prejudiced.  The burden of proving noncooperation

19  is on the insurer."  *Id.*, at 410 (*internal citations omitted*).  "The only limitation on the

20  requirement that insureds cooperate with the insurer's investigation is that the insurer's

21  requests for information must be material to the circumstances giving rise to liability on

22  its part."  *Tran v. State Farm Fire & Cas. Co.*, 136 Wn. 2d 214, 224 (1998)(*citing*

23  *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712 (1997)).  Information is

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 15

material, if at the time the inquiry was made, it "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Id.*

The Granite State policy includes the following relevant provisions:

**CONDITIONS**
**2. Duties in the Event of Occurrence, Offense, Claim or Suit**
        a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim . . .
        b. If a claim is made or "suit" is brought against any insured, you must:
            (1) Immediately record the specifics of the claim or "suit" and the date received; and
            (2) Notify us as soon as practicable.
        You must see to it that we received written notice of the claim or "suit" as soon as practicable.
        c. You and any other involved insured must:
            (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"
            (2) Authorize us to obtain records and other information;
            (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit," and
            (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
        d. No insured will, except at that insured's own costs, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid without our consent.

Dkts. 24-2, at 26 and 24-3, at 35–36.  Under the heading "Transfer of Your Rights and Duties under this Policy," the contract further contains a provision providing: "[y]our rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."  Dkts. 24-2, at 14 and 24-3, at 21.

### 1.     Alleged Breach

In this case, Integrity, and its assignee the Association, "substantially and materially" breached the notice clauses of the contract. *Staples,* at 410.  Integrity and the Association had been in litigation for over 15 months before Granite State was notified of the litigation.  There is no evidence that Integrity and the Association notified Granite State of the potential claims "as soon as practicable."

Integrity and the Association "substantially and materially" breached the cooperation clauses of the insurance contract. *Staples,* at 410.  Before Integrity notified Granite State of the litigation, it had already entered into the Contingent Settlement Agreement that included a stipulated 4.1-million-dollar judgment, and assigned its claims to the Assocation.  None of that was disclosed to Granite State at the time of the tender letter or in the months that followed.  Granite State did not find out about the agreement until almost ten months after the tender was made to it.

Further, Granite State began to investigate the claims against Integrity around a week after receipt of the tender letter, in early December 2012.  Dkt. 24-1, at 66.  It requested basic information which would be "material to the circumstances giving rise to its liability" (*Tran,* at 224), including records of Integrity's work on the Project, the number of units in the Project, the Project's construction contracts, the certificate of occupancy, any documentation as to the allegations, documents relating to subcontractors, and any other documents Integrity believed would assist Granite State in making a coverage determination.  Dkt. 24-1, at 66.  Its attempts at garnering this material information were met with virtual silence.  Granite State initially contacted Mr.

1  Muth (who wrote the tender letter and told Granite State that he represented Integrity)

2  and Mr. Muth failed to respond.  Mr. Muth just forwarded the requests for information on

3  to Mr. Flanagan (who represents the Association), who did not respond.  In early

4  February 2013, Granite State again contacted Mr. Muth, who said that he forwarded the

5  requests on to Mr. Flanagan, who again did not respond.  Dkts. 24-1, at 68-70; 28, at 7;

6  and 29, at 9.  In early April 2013, Granite State again attempted to contact Mr. Muth and

7  Mr. Flanagan.  Dkt. 24-1, at 72.  It noted that "[t]o date we have had no response to our

8  request for information.  Please advise if the insured plans to pursue coverage."  Dkt. 24-

9  1, at 72.  Mr. Muth did not respond.  Dkt. 28, at 7.  Mr. Flanagan asked for a copy of the

10  policy "in order to make that decision."  Dkt. 24-1, at 74.  Granite State forwarded the

11  policy. Dkt. 29, at 10.  No one responded.  In June of 2013, Granite State again wrote to

12  Mr. Flanagan, asking "is there anything else you need to make your decision?"  Dkt. 24-

13  1, at 80.  No response was made.  It was not until November 20, 2013, that Integrity

14  disclosed to Granite State, for the first time, the facts and details of the September 2012

15  Contingent Settlement Agreement between Integrity and the Association and the entry of

16  the $4.1-million consent judgment.  Dkt. 24, at 3-4.

17         Furthermore, Integrity and the Association breached their duty under the

18  Washington Administrative Code ("WAC") 284-30-370 which provides, in part, that:

19  "[a]ll persons involved in the investigation of a claim must provide reasonable assistance

20  to the insurer . . . ."  There is no evidence that Integrity provided any assistance, much

21  less "reasonable assistance" to Granite State in its investigation of the claims.

Although the Association argues that Integrity did not breach the duty to cooperate because the only germane issue at the time was whether Granite State would defend it or not, no such limitation exists under the statutes or case law cited. Integrity and the Association "substantially and materially" breached the notice and the cooperation clauses of the insurance contract (*Staples,* at 410), as well as breached their duty under Washington law to cooperate with Granite State.

## 2.     Actual and Substantial Prejudice

Although it is a close question at this time, the Court is unable to conclude as a matter of law that Granite State has been actually and substantially prejudiced by Integrity's and the Association's breach of the cooperation and notice provisions of the contract. "Prejudice" means a damage or detriment to one's legal claims. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn. 2d 872, 889 (2013). "Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law." *Tran v. State Farm Fire & Cas. Co.,* 136 Wn.2d 214, 228 (1998).

To show prejudice, an insurer must prove that an insured's breach "had an identifiable and material detrimental effect on its ability to defend its interests." *Id.*

> Indeed, this court and the Court of Appeals have explicitly and implicitly relied on a variety of factors when considering whether an insured's breach prejudiced an insurer. Were damages concrete or nebulous? Was there a settlement or did a neutral decision maker calculate damages; what were the circumstances surrounding the settlement? Did a reliable entity do a thorough investigation of the incident? Could the insurer have eliminated liability if given timely notice? Could the insurer have proceeded differently in the litigation? This is not an exhaustive list, nor does it indicate our wholesale approval of the cited cases, but it illustrates that many factors may determine whether an insurer was actually prejudiced.

1  *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.,* 164 Wn. 2d 411, 429–30 (2008) (*internal*

2  *citations omitted*).

3      As to prejudice, Granite State points to:  (1) Integrity's entry into a Contingent

4  Settlement Agreement with the Association that called for a stipulated $4.1-million-dollar

5  judgment before notice was given to Granite State; the agreement purported to assign to

6  the Association Integrity's contractual rights under the policy and any extra-contractual

7  rights against Granite State; (2) Integrity and the Association continued to fail to disclose

8  the Contingent Settlement Agreement; (3) Integrity's and the Association's ongoing

9  failure to respond to Granite State's request for basic information about the claim,

10  "thereby thwarting Granite State's attempt to conduct an investigation;" (4) Integrity's

11  "misleading Granite State about whether it still intended to pursue coverage from Granite

12  State," while "orchestrat[ing] a collusive scheme with the underlying claimant, with the

13  goal of 'setting up' Granite State for bad faith" and (5) as a result, Integrity's and the

14  Association's agreed $4.1-million-dollar judgment was entered and "there was nothing

15  left to defend."  Dkt. 23 at 10–11.

16      First, Granite State has failed to show that "there is nothing left to defend."  The

17  reasonableness of the settlement must still be determined and is, at most, the

18  "presumptive measure of the insured's damages in a bad faith action . . . ."  *Howard v.*

19  *Royal Specialty Underwriting Inc.*, 121 Wn. App. 372, 375 (2004).  However, "in

20  construction defect cases, . . . protecting the insurer from excessive judgments that are the

21  product of collusion or fraud between the claimant and insured, is the main concern."

22  *Heights at Issaquah Ridge Owners Ass'n v. Derus Wakefield I, LLC,* 145 Wn. App. 698,

704 (*Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 736 (2002)).  While the question of whether the judgment is excessive is debatable, Granite State has put forth a strong case that the judgment is a product of collusion.  To that end, the settlement may still be rendered meaningless on the issue of Granite State's ultimate liability.

Second, even if this particular settlement is somehow considered reasonable under the circumstances, the Court grants Granite State's motion for summary judgment on the claim for bad faith.  The remaining issue, then, is coverage under the contract.  On that issue, property damages are concrete and "easier to ascertain" than nebulous damages such as defamation.  *See Northwest Prosthetic & Orthotic Clinic, Inc. v. Centennial Ins. Co.*, 100 Wn. App. 546, 554 (2000).  Therefore, the Court finds that there is plenty left for Granite State to defend and, at this time, Granite State has failed to show that its rights under the contract of insurance have been materially prejudiced.

The Court, however, recognizes that this matter is most likely far from over.  In light of this fact, the Court denies Granite State's motion without prejudice.  In the event Granite State discovers facts that show that its rights under the contract have been materially affected by Intergrity's failure to cooperate, Granite State may file another dispositive motion.

**E.**     **The Association's Motion for Summary Judgment That Granite State is Liable for Breach of its Duty to Defend**

"The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014), as

1   corrected (Aug. 6, 2014) (*quoting Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d

2   398, 404–05 (2010) (*internal quotation marks omitted*).  "[T]he duty to defend is

3   different from and broader than the duty to indemnify.  While the duty to indemnify

4   exists only if the policy covers the insured's liability, the duty to defend is triggered if the

5   insurance policy conceivably covers allegations in the complaint." *Id.* (*citing Am. Best*

6   *Food,* at 404-405 and *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454

7   (2007)).

8
   > The duty to defend generally is determined from the "eight corners" of the
9   > insurance contract and the underlying complaint. There are two exceptions
   > to this rule, and both favor the insured. First, if coverage is not clear from
10  > the face of the complaint but coverage could exist, the insurer must
   > investigate and give the insured the benefit of the doubt on the duty to
11  > defend. Second, if the allegations in the complaint conflict with facts
   > known to the insurer or if the allegations are ambiguous, facts outside the
12  > complaint may be considered.

13  *Id.* at 64-65 (*internal citations omitted*).  "Extrinsic facts may only be used to trigger the

14  duty to defend; the insurer may not rely on such facts to deny its defense duty."  *Id.*, at

15  65.

16
       The Association argues that the Second Amended Complaint in the underlying
17
    lawsuit alleged "conceivably" covered liabilities under at least one of Granite State's
18
    policies with Integrity and that no exclusions in that policy bar coverage, including the
19
    exclusion for "multi-unit homes," "apartment buildings," or "multi-family unit buildings
20
    exceeding three stories in height."  Dkt. 27.  The Association argues that Granite State's
21
    failure to defend Integrity breaches the insurance contract.  Dkts. 27 and 38.  The
22

23

24

1  Association also argues that Granite State's failure to timely defend violates WAC 284-

2  30-370, and so constitutes bad faith as a matter of law.  *Id.*

3      Based on the eight corners of the insurance contract and Second Amended

4  Complaint, it appears that the underlying lawsuit alleged "conceivably" covered

5  liabilities. The duty to defend was triggered.  However, as stated below, Integrity and the

6  Association have failed to point to issues of fact in regard to whether Granite State acted

7  in bad faith, and so, that claim for bad faith is dismissed.  Accordingly, to the extent that

8  Integrity and the Association seek a declaration that Granite State's failure to defend was

9  in bad faith, the motion is denied.

10      Furthermore, Granite State argues that it is relieved of its duty to defend because

11  of Integrity's breach of the insurance contract's provisions on cooperation, notice, and

12  that anti-assignment provisions actually prejudiced it.  Dkt. 37.  The Court, however, is

13  unable to conclude at this time that Granite State is relieved of its duty to defend because

14  Integrity's and the Association's breaches of the insurance contract caused it actual

15  prejudice. There are issues of fact as to whether Granite State has suffered actual and

16  substantial prejudice due to Integrity's and the Association's failure to cooperate with

17  Granite State, thwarting its investigation, and for entering into a settlement agreement

18  with the Association before notifying it of the underlying lawsuit (and concealing the

19  settlement agreement), and stipulating to a $4.1-million-dollar judgment without

20  notifying Granite State.  Accordingly, the Association's motion for summary judgment

21  for a declaration that Granite State is liable for breach of its duty to defend (Dkt. 27) is

22  denied.

**F.      Granite State's Motion for Summary Dismissing of Integrity's Counterclaims**

Granite State also moves for summary dismissal of Integrity's counterclaims which are (1) breach of contract, (2) tort of bad faith, (3) coverage by estoppel, and (4) violation of the CPA. Dkt. 23.

**1.      Breach of Contract**

Integrity argues that Granite State breached provisions of the insurance contract when it failed to timely defend it in the underlying lawsuit.  The Court finds that there exist issues of fact whether Granite State breached the insurance contract when it made no decision on whether to defend Integrity in the underlying lawsuit.  Therefore, Granite State's motion to summarily dismiss this claim is denied.

**2.      Tort of Bad Faith**

"An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn. 2d 398, 412 (2010) (*as corrected on denial of reconsideration* (June 28, 2010)).

The Association has failed to point to facts showing that Granite State's conduct was "unreasonable, frivolous or unfounded." *Am. Best Food,* at 412.  The Association argues that Granite State's failure to timely defend violates not only the contract, but WAC 284-30-370, and RCW § 48.01.030, and so constitutes bad faith as a matter of law. *Id*.  The Association fails to point to any evidence that Granite State violated WAC 284-30-370 or RCW § 48.01.030, considering the circumstances here.

Under WAC 284-30-370:

1
2
3

> Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time. All persons involved in the investigation of a claim must provide reasonable assistance to the insurer in order to facilitate compliance with this provision.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The Association fails to show that there is any evidence that the investigation could reasonably have been completed within 30 days.  Counsel for Integrity and the Association as "persons involved in the investigation of the claim" did not provide Granite State with "reasonable assistance" or any assistance, for that matter.  As stated above, Integrity and its assignee, the Association, violated the cooperation clause of the insurance contract when they failed to provide Granite State any of the information it was requesting or even respond to its inquiries.  There is no evidence that the investigation could have reasonably been done within 30 days in light of Integrity's and the Association's conduct here.  Likewise, RCW § 48.01.030 provides only that "all persons" (including the representatives of the insurer and insured) act in "good faith" in insurance matters.  The Association fails to show any evidence that Granite State did not act in a reasonable manner or did not act in good faith.  *See Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470 (1988) (where insurer's actions are reasonable, the insurer does not act in bad faith).

19
20
21
22
23
24

Finally, to the extent that Integrity bases its bad faith counterclaim on Granite State's alleged pattern and practice of unreasonably denying claims and then suing its insureds, Integrity did not point to any evidence supporting this claim.  Therefore, Granite State's motion is granted and the Association's counterclaim for bad faith is dismissed.

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 25

### 3.      Coverage by Estoppel

"Estoppel to deny coverage is one remedy for breaching a duty to defend in bad faith. But in the absence of bad faith, coverage by estoppel does not apply." *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 203 (2014) (*internal citations omitted*).

Granite State moves to dismiss the counterclaim for "coverage by estoppel" by arguing that it is a form of relief and not a cause of action. There is no response to this argument. Insofar as Integrity still seeks it as a form of relief for Granite State's alleged breach of the duty to defend, this form of relief is dismissed because it failed to point to issues of fact as to whether Granite State acted in bad faith. Granite State's motion to dismiss the claim for relief for coverage by estoppel is granted.

### 4.      CPA

Integrity failed to address Granite State's motion regarding its CPA claim. The claim is dismissed with prejudice.

### 5.      Unclean Hands

Granite State also argues Integrity's and the Association's counterclaims should be dismissed because of their unclean hands, particularly their coverage by estoppel claim, an equitable remedy. Dkt. 23. Integrity's and the Association's counterclaims for bad faith, equitable estoppel, and for violation of the CPA are dismissed as above. The only counterclaim that remains is for breach of contract.

In general, "a party with unclean hands may not assert equitable estoppel" in Washington. *Top Line Builders, Inc. v. Bovenkamp*, 179 Wn. App. 794, 815 (2014). Equitable estoppel or "unclean hands" has three elements: "(1) an admission, statement,

1   or act inconsistent with the claim afterwards asserted, (2) action by the other party on the

2   faith of such admission, statement, or act, and (3) injury to such other party resulting

3   from allowing the first party to contradict or repudiate such admission, statement, or act."

4   *Saunders v. Lloyd's of London*, 113 Wn. 2d 330, 340, 779 P.2d 249, 255 (1989).

5           Integrity and the Association do not dispute that the three elements are met.

6   Instead, they argue that the doctrine of unclean hands requires a showing of willful

7   misconduct and there was no willful misconduct here.  Dkt. 31, at 12-13.

8           To the extent that Washington law supports a requirement that the conduct

9   complained of be "willful," Integrity and the Association have failed to point to issues of

10  fact.  Integrity (and the Association) do not dispute that they had a statutory duty to

11  cooperate with Granite State in the defense of the claims against Integrity.  Their failure

12  to cooperate is inconsistent with their assertion now that Granite State should defend

13  them.  (Incidentally, silence may satisfy the first element of a claim for equitable

14  estoppel, "if there is an affirmative duty to speak."  *Ticor Title Ins. Co. of California v.

15  Nissell*, 73 Wn. App. 818, 823 (1994)).  Their argument that Mr. Muth did not

16  intentionally fail to disclose the Contingent Settlement Agreement is only a part of

17  Granite State's allegations against it.  Moreover, Mr. Muth and Mr. Flanagan knew by

18  mid-December that the Contingent Settlement Agreement had not been sent, and so even

19  if the initial failure to disclose the agreement was unintentional, it cannot be said that the

20  later failure was unintentional.

21          Integrity and the Association argue that their alleged misconduct did not relate to

22  Granite State's failure to defend Integrity in the underlying lawsuit.  Dkt. 31.  "It is

1   fundamental to the operation of the unclean hands doctrine that the alleged misconduct

2   by the plaintiff relate directly to the transaction concerning which the complaint is made."

3   *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1239-40 (W.D. Wash. 2008)

4   (*internal citation omitted*).  Integrity and the Association argue that Granite State's

5   decision to defend Integrity should have been made based on the policy language and the

6   allegations in the Second Amended Complaint, and without reference to extrinsic

7   evidence.  Dkt. 31.

8        The Court finds that there exists issues of fact as to whether Integrity's and the

9   Association's failure to cooperate "directly related" to Granite State's failure to decide

10  whether or not to defend Integrity in the underlying lawsuit.  Therefore, Granite State's

11  motion to summarily dismiss the breach of contract counterclaim based on the defense of

12  "unclean hands" is denied without prejudice.

13

14  **G.    Other Issues**

15       The Association's attorney, Leonard Flanagan, filed a declaration in support of the

16  Association's motion.  Dkt. 29.  Parties may wish to consider potential implications of

17  Washington's Rule of Professional Conduct 3.7, "Lawyer as Witness," if this matter goes

18  to trial.

19                                **III.    ORDER**

20       Therefore, it is **ORDERED** that:

21       1.    The Association's motion to certify three questions to the Washington State

22  Supreme Court (Dkt. 50) is **DENIED**.

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 28

1    2.     Granite State's Motion for Partial Summary Judgment (Dkt. 23) is

2  **DENIED without prejudice**, in part, as stated, and **GRANTED** as to Integrity's

3  counterclaims for the tort of bad faith, coverage by estoppel, and violation of

4  Washington's Consumer Protection Act.  Those counterclaims are **DISMISSED.**

5    3.     The Association's Cross-Motion for Summary Judgment (Dkt. 27) is

6  **DENIED**.

7    Dated this 9th day of January, 2015.

8

9

10   _____
   BENJAMIN H. SETTLE
11   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND ON CERTIFICATION OF
QUESTION - 29